UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ANGELA ROOT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 09-50-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL J. ASTURE, Commissioner of | ) | **AND ORDER** |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff, Angela Root, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the defendant, Commissioner of Social Security ("Commissioner"), which denied her July 3, 2006, applications for disability insurance benefits ("DIB") and social security income ("SSI"). Because the Commissioner's decision was supported by substantial evidence and was made pursuant to the proper legal standards, the Court denies Root's Motion for Summary Judgment, R. 6, and grants the Commissioner's, R. 7.

## FACTUAL BACKGROUND

Born in 1975, Angela Root worked at a Walmart where, in June 2005, she was exposed to a chemical cleaning product, OOPS. Transcript ("Tr.") at 78, 310, 380. Because of this exposure, she allegedly became disabled on June 22, 2005, and thus, has not worked since then. *Id.* at 78. On June 27, 2005, she went to the emergency room at Marymount Medical Center because of hoarseness in her speech, difficulty breathing, and swelling around her eyelids. *Id.* at 197. She was hospitalized to treat acute respiratory failure. *Id.* at 310. Dr. Aqeel Mandviwala

concluded her respiratory failure was from an angioedema, a swelling beneath the skin.  *Id.* at

199; 310.  Root took medication to treat this and was on mechanical ventilation.  *Id.*  at 199.  Dr.

Mandviwala believed her exposure to OOPS likely caused the respiratory failure.  *Id.* at 310-11.

But he was unable to rule out eating fish products as a possible cause.  *Id.*.

On July 8, 2005, Root had a follow-up visit with Dr. Mandviwala, and Root was feeling

better.  *Id.* at 310-11.  She no longer had symptoms of stridor, dyspnea, cough, or wheezing.  *Id.*

Her only symptom at that point was fatigue.  *Id.* at 310.  Dr. Mandviwala recommended that

Root avoid further exposure to OOPS.  *Id.* at 311.  According to Dr. Mandviwala, the respiratory

issue was resolved during the prior visit.  *Id.* at 195, 310.

On August 22, 2005, Root complained of "knots on the head," which were tender to

touch, as well as swelling of her forehead.  *Id.* at 379.  Thus, Dr. Mandviwala referred her to an

allergist, Dr. Arun Kadambi.  *Id.*  On September 2, 2005, Root saw Dr. Kadambi.  At that time,

her lab results and breathing were both normal.  *Id.* at 15.  Dr. Kadambi did not believe that

OOPS was causing Root's issues, since he did not believe the effects of exposure to OOPS

would last that long.  *Id.*  He concluded that the cause of her symptoms was unknown.  *Id.*

In addition to the breathing and fatigue symptoms, there was some evidence that Root

might have had a heart problem.  On June 28, 2005, an echocardiogram—a sonogram of her

heart—showed evidence of cardiomyopapthy, a disease of the heart muscle.  *Id.* at 195.  In a

doctor's visit on September 16, 2005, Root's complaints of generalized weakness and occasional

shortness of breath continued.  *Id.*  Dr. Michele Friday recommended that she not return to her

duties and an echocardiogram be performed to examine her heart.  *Id.* at 428.  Dr. Friday

-2-

reviewed her echocardiogram and lipid profile on October 10, 2005. *Id.* at 422. She still had some concerns about her going back to work and wanted to reassess her ability to return to work in one month. *Id.* at 424. She also noted that Root had a history of cardiomyopathy. *Id.* at 424. Root visited Dr. Friday again on January 9, 2006, and now complained of having anxiety disorder. *Id.* at 418. However, she no longer had any shortness of breath. *Id.* Medical records from later doctors' visits suggested Root did not suffer from cardiomyopathy any longer. *Id.* Echocardiograms on March 28, 2006, and June 27, 2006, showed that her heart muscle was normal. *Id.* at 16.

On April 13, 2006, Dr. David B. Cassidy wrote a letter stating that the evidence of cardiomyopathy from the June 28, 2005, echocardiogram was no longer present. *Id.* On April 13, 2006, Dr. Cassidy also conducted a Cardiolite stress test on Root and those results came back normal. *Id.*

Nonetheless, on June 21, 2006, treating physician Dr. Friday stated that Root could only do less than sedentary work because of an angioneurotic edema and cardiomyopathy. *Id.* at 17, 563-67. She also stated that Root could only: sit four hours per work day, stand and walk for less than two hours, and on occasion lift less than 10 pounds. *Id.*

Root, regrettably, suffered from other ailments during this time. From June 22, 2006, through November 21, 2006, Root was also treated for depression and anxiety. *Id.* at 16. At that time, Root was dealing with stress allegedly due to her inability to work and her financial situation. *Id.* Her treatment for depression and anxiety included counseling and medication. *Id.* Dr. Racquel Vasquez treated Root for her depression and anxiety symptoms. *Id.* at 923. On

-3-

August 24, 2007, Dr. Vasquez claimed that Root had poor or no mental ability to perform any work. *Id.* at 17. Further, Dr. Vasquez concluded that Root had concentration issues that prevented her from completing tasks in a timely fashion. *Id.*

Dr. Kadambi, Root's allergist, also gave an opinion on Root's ability to work. *Id.* at 928. On August 27, 2007, he stated Root could sit for five hours per work day and stand for two hours but not walk at all. *Id.* at 17. He also opined that Root could lift 10 pounds regularly and 11 to 20 pounds only occasionally. *Id.*

During the relevant time period, Root was also treated for asthma and astigmatism. *Id.* at 16. She took medication to alleviate asthma-related wheezing. *Id.* She used corrective contact lenses because of her astigmatism. *Id.*

## PROCEDURAL HISTORY THROUGH THE ALJ HEARING

Root filed applications for DIB and SSI on July 13, 2006. *Id.* at. 78-83 (DIB application); 91 (SSI application). The Social Security Administration denied Root's applications initially on September 26, 2006, *id.* at 49-50, and then again upon reconsideration on December 15, 2006, *id.* at 59-65. Thereafter, Root filed a written request for a hearing. *Id.* at 66-67. Subsequently, on September 13, 2007, Administrative Law Judge James Alderisio ("ALJ") conducted a hearing and heard testimony from Root and Jane Hall, a vocational expert. *See id.* at 20-35 (transcript of hearing).

At the hearing, Root testified that she could not go back to her job at Walmart because she had: chest pains, allergies, migraines, and asthma. *Id.* at 25. She did not have these issues before she allegedly became disabled. *Id.* Further, she testified that she did not have the stamina

to complete an eight-hour work day. *Id.* She claimed that her exposure to the chemical affected the vision in her right eye also. *Id.* at 26. She noted that her workers' compensation claim was still pending. *Id.* at 27. Her doctors informed her that her immune system was weak, and they could not say whether her health would improve in the long run. *Id.* at 30.

The vocational expert, Hall, testified that she knew of the previous work that Root had done. *Id.* at 30-31. The ALJ presented her with various hypotheticals. *Id.* at 31. In particular, the ALJ asked Hall whether there was work locally and nationally for a person that could perform medium work with certain restrictions. *Id.* Hall stated that there were thousands of jobs in Kentucky and in the United States for such a person. *Id.* Hall made a similar finding if the person could perform light work with the same restrictions or if the person could perform sedentary work. *Id.* at 32-33. However, Hall stated that there were no jobs for a person that: (1) had migraines, allergies, chest pain, and asthma (sometimes uncontrolled) and (2) would miss more than three days of work each month. *Id.* at 33. Root's counsel also asked Hall a few additional hypotheticals. *Id.* at 34.

## THE ALJ'S ANALYSIS FOLLOWING THE HEARING

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] In this case, at Step 1, the ALJ found that Root had not engaged in

---

[1]     The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her

substantial gainful activity since June 22, 2005, the date she allegedly became disabled.  Tr. at 12.  At Step 2, the ALJ found that Root had the following combination of severe impairments: angioneurotic edema, cardiomyopathy, decreased vision in the right eye, allergies, anxiety, and depression.  *Id.* at 12-13.  At Step 3, the ALJ found that Root did not have an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 13.  Thus, the ALJ could not find that Root was disabled on that basis.  At Step 4, the ALJ found that Root's impairments prevented her doing any past relevant work.  *Id.* at 18.  Her past work required nonexertional limitations beyond her residual functional capacity ("RFC").  *Id.*  Considering Root's age, education, work experience, and RFC, the ALJ found at Step 5 that there were a significant number of jobs in the national economy that Root could perform.  *Id.*  Therefore, on that basis, the ALJ could not find Root was disabled.  For the foregoing reasons, the ALJ issued a decision on January 29, 2008, finding that Root was not disabled and therefore not entitled to DIB or SSI.  *Id.* at 19.  On January 9, 2009, the Appeals Council declined to review the ALJ's decision, *id.* at 1-4, at which point the ALJ's decision became the final decision of the Commissioner of Social Security.

Root now seeks review in this Court.

---

past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (citations omitted).

**DISCUSSION**

On appeal to this Court, Root appears to argue that:  (1) substantial evidence did not support the ALJ's opinion, (2) the ALJ improperly discounted the opinions of three of Root's treating physicians, (3) the ALJ improperly ignored Root's testimony, and (4) the ALJ failed to consider whether Root could hold a job for significant period of time.  Root is incorrect on each ground.

Judicial review of the Commissioner's decision is restricted "to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion.  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

*1.  Substantial Evidence Supported the ALJ's Decision*

The ALJ relied on several pieces of evidence in concluding that there were a significant number of jobs in the national economy that Root could perform.  Tr. at 18.  The ALJ considered the following possible sources of Root's disability:  cardiac issues, asthma, astigmatism, and depression and anxiety.  *Id.* at 14-16.  The ALJ concluded that none of these medical issues prevented Root from working and, thus, she was not disabled.

With respect to Root's cardiac issues, the ALJ noted medical records demonstrating that her cardiac issues were resolved over time. *Id.* at 14-16. Dr. Mandviwala concluded her respiratory failure was from an angioedema, a swelling beneath the skin. *Id.* at 199. But this was resolved after her June 27, 2005, visit. *Id.* at 195. In her next medical consultation on July 8, 2008, the symptoms of stridor, dyspnea, cough, and wheezing were no longer present and Root was feeling better. *Id.* at 15. Her only symptom at that point was fatigue. *Id.*

In addition, an echocardiogram had evidence of cardiomyopapthy, a disease of the heart muscle. *Id.* at 195. The ALJ acknowledged that symptoms of generalized weakness and occasional shortness of breath continued, as documented in a doctor's visit on September 16, 2005. *Id.* at 15. However, more importantly, medical records from later doctors' visits showed the ALJ that Root did not suffer from cardiomyopathy any longer. *Id.* Rather, echocardiograms on March 28, 2006, and June 27, 2006, showed that her heart muscle was normal. *Id.* at 16.

Further, the ALJ noted that on April 13, 2006, Dr. David B. Cassidy wrote a letter stating that the evidence of cardiomyopathy from the June 28, 2005, echocardiogram was no longer present. *Id.* In other words, Dr. Cassidy stated that Root did not have ongoing cardiac disease. *Id.* On April 13, 2006, Dr. Cassidy also conducted a Cardiolite stress test on Root and those results came back normal. *Id.* That test further corroborated the conclusion that Root did not suffer from any cardiac problems. Thus, the ALJ did not believe cardiac issues could cause Root to be disabled.

The ALJ also reviewed the evidence regarding Root's treatment for depression and anxiety. *Id.* at 16. He noted that Root had increased stress due to her inability to work and her

financial situation. *Id.* The ALJ also pointed out that Root was being treated via counseling and medication. *Id.* Further, in reviewing her medical records related to her depression and anxiety, the ALJ felt that the symptoms were situational and, more importantly, managed with medication. *Id.* at 17. The ALJ did not find that the depression or anxiety was a cause for her alleged disability. As will be discussed later, the ALJ properly discredited the opinion of Dr. Racquel Vazquez, one of Root's treating physicians, which suggested that Root's mental abilities would prevent her from working. *Id.*

Similarly, the ALJ reviewed Root's other medical conditions, including asthma and astigmatism. He noted that moderate, persistent asthma required medication for her wheezing. *Id.* at 16. The ALJ also recognized that Root had astigmatism in her right eye, which was treated with contacts. *Id.* The ALJ did not find these to be a cause of a disability nor does Root point to her asthma or astigmatism as a basis for her claim for benefits.

At the hearing, the ALJ questioned a vocational expert, Hall, about whether a person capable of medium work with Root's restrictions could get work in Kentucky and nationally. Tr. at 31-33. Hall said yes, and thus, the ALJ found Root had available jobs in significant numbers in the national economy. *Id.* at 18. On that basis, the ALJ concluded Root was not disabled.

Root states, in a conclusory fashion, that hypotheticals must be reasonably based on substantial evidence and alleges they were not in this case. Presumably, she is referring to the hypotheticals applied in the hearing; however, Root does not explain how the hypotheticals were based on something other than substantial evidence in the record. In fact, it is clear that the

-9-

hypotheticals mirrored Root's restrictions.  For example, they took into account the fact that Root could not be exposed to chemicals.  *Id.* at 13.  This Court has no obligation to search the record to develop and support the arguments of the parties.  *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).  Thus, the Court rejects this argument as it is presented, since there is substantial evidence that supported the hypotheticals presented at the hearing.

Similarly, Root claims that the ALJ did not consider her exertional and non-exertional limitations.  This argument is rejected for two reasons.  First, as has been discussed, the ALJ did rely on substantial evidence in concluding that Root was not disabled.  In fact, based on Root's non-exertional limitations, the ALJ found that Root could *not* perform her previous jobs.  Tr. at 18.  This indicates that the ALJ did take into account Root's limitations.  Second, Root again makes an underdeveloped argument, which lacks evidentiary support.  She does not cite to the record to show which limitations the ALJ overlooked.  Root's contention will be rejected as it is.  *See Hollon*, 447 F.3d at 491.

## 2. Treating Physicians' Opinions

Root argues that the ALJ did not give appropriate weight to the opinion of three of her treating physicians.[2]  Root, however, misinterprets the standard of review that this Court applies to the ALJ's opinion.  The ALJ made sufficiently clear why he gave the weights that he did and

---

[2]    Root alleges that the ALJ completely ignored the opinions of the treating physicians. R. 6 at 5.  This is completely inaccurate.  Rather, the ALJ gave controlling weight to the opinion of Dr. Cassidy, a treating physician, tr. at 16, and assigned weight to the three treating physicians that he did not give controlling weight, tr. at 17.

-10-

based those weights on evidence in the record.  Hence, for the purposes of this review, the ALJ properly assigned weight to the treating physicians' opinions.

Specifically, Root argues that the ALJ did not properly review the opinions of Dr. Friday, Dr. Kadambi, and Dr. Vasquez.  She is wrong on all three accounts.

The ALJ gave the opinion of Dr. Cassidy, another treating physician, controlling weight since the opinion was supported by objective medical evidence and was consistent with the other substantial evidence in the record.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).  Dr. Cassidy's opinion stated that Root had no cardiac issues and no disability based on such issues.  Tr. at 16.  To show that his opinion was supported by objective medical evidence, the ALJ cited the medical records corroborating the opinion:  Root's normal echocardiograms in 2006, and her April 13, 2006, Cardiolite stress test.  Moreover, there was no objective evidence that Root still had cardiac issues; thus, the ALJ found Dr. Cassidy's opinion to be consistent with the medical evidence as a whole.  *Id.*  Root does not contest that Dr. Cassidy's opinion was properly given controlling weight.

Dr. Friday's opinion was not given controlling weight because it was neither consistent with the medical evidence as a whole nor well-supported by objective medical evidence like clinical studies.  *Id.* at 17.  After making such a finding, the ALJ must "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting § 404.1527(d)(2)).  Here, the ALJ did just that.

11

Dr. Friday stated that Root could only do less than sedentary work because of angioneurotic edema and cardiomyopathy. Tr at 17. She also stated that Root could only: sit four hours per work day, stand and walk for less than two hours, and on occasion could lift less than 10 pounds. *Id.* Since other evidence showed that her edema and cardiac issues had both been resolved, the ALJ found Dr. Friday's opinion to be inconsistent with substantial evidence in the record and gave it no weight. *Id.* Additionally, the ALJ found Dr. Friday's opinion to be less credible because it was not supported by clinical studies, like Dr. Cassidy's was. The ALJ also felt Dr. Cassidy's opinion was more credible since Dr. Cassidy had more exposure to Root. In light of those facts, the ALJ assigned Dr. Friday's opinion no weight. *Id.* By setting forth his reasons for giving Dr. Friday's opinion no weight, the ALJ fulfilled his obligations under the regulations.

Similarly, the ALJ found that Dr. Kadambi's opinion was inconsistent with the medical evidence in the record as a whole and, thus, did not give it controlling weight. *Id.* Dr. Kadambi stated Root could sit for five hours per work day and stand for two hours but not walk at all. *Id.* He also opined that Root could lift 10 pounds regularly and 11 to 20 pounds only occasionally. *Id.* The ALJ noted, however, that other medical evidence showed that Root's cardiac issues and allergic reaction were now resolved. *Id.* Thus, there was no evidence to support a finding that Root had a physical disability. On that ground, the ALJ gave Dr. Kadambi's opinion minimal weight. *Id.* The ALJ had a proper basis for giving Dr. Kadambi's opinion less than controlling weight and articulated why he gave it minimal weight. Therefore, he satisfied his obligations under the regulations.

The third treating physician that the ALJ did not give controlling weight to was Dr. Vasquez.  Again, the ALJ properly described his reasons for why Dr. Vasquez's opinion was given limited weight.  The ALJ found that her opinion was not consistent with Root's treatment records.  Dr. Vasquez claimed that Root had poor or no mental ability to perform any work and had concentration issues that prevented Root from completing tasks in a timely fashion.  *Id.*  However, the ALJ noted that Root's symptoms were situational and appeared to be managed with medication.  *Id.*  Thus, the ALJ did not find that Dr. Vasquez's opinion was consistent with the medical evidence of Root's mental abilities.  This inconsistency led the ALJ to give her opinion limited weight.

### 3. The Plaintiff's Testimony

Root argues that her testimony is important and should not have been ignored.  This argument fails since the ALJ did address her testimony.  The ALJ acknowledged that her medically determinable impairments could reasonably be expected to produce the symptoms of breathing problems and fatigue she alleged.  Tr. at 14.  But the ALJ did not find credible her testimony about the intensity, persistence, and limited effects of these symptoms.  *Id.*  He went on to examine her medical records and found that her illnesses were being adequately treated or had been resolved.  *Id.* at 14-18.  Specifically, in assessing her testimony's credibility, he needed to decide whether either:  (1) the objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.  *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990) (quoting *Duncan v.*

13

*Sec'y. of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).  Here, the ALJ did not find medical evidence to support Root's testimony of the intensity, persistence, and limited effects of the symptoms.  And Root does not point out any evidence to support her testimony.  Thus, the ALJ's credibility finding will not be disturbed.  *See, e.g., Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987) ("Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." (citing *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984))).

Separately, Root also asserts that the medical evidence clearly indicated the intensity, persistence, and limited effects of the symptoms.  In making this argument, Root cites no evidence to support her position.  Again, the Court will not develop Root's arguments for her or undertake an open-ended review of the record to find evidence in Root's favor.  *See Hollon*, 447 F.3d at 491.  Without any evidence cited, Root has not shown how the ALJ improperly disregarded Root's testimony of her pain and suffering.

Root asserts that the ALJ did not consider the combined effect of all her impairments.  She is incorrect.  Under the regulations, the ALJ is to consider the combined effect of all of Root's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled.  *See Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1071 (6th Cir. 1992) (citing 20 C.F.R. § 404.1523).  The ALJ did just that when he reviewed the plaintiff's testimony.  Tr. at 14.  He noted that she claimed to have breathing problems, heart problems, and fatigue which prevented her from working.  *Id.*

14

In fact, the ALJ agreed that her impairments could cause the alleged symptoms. *Id.* But the ALJ simply did not find credible evidence of the intensity, persistence, and limiting effects of these symptoms. Thus, the ALJ fulfilled his obligation to consider the combined effect of her impairments. *See Walker*, 980 F.2d at 1071 (citing 20 C.F.R. § 404.1523).

### 4. *The Plaintiff's Ability to Hold a Job for a Significant Period of Time*

Root argues that the ALJ erred since he did not consider the fact that, even if Root could get a job, Root could not sustain it for a significant period of time. Again, she does not cite any evidence to support this argument, and thus, it is rejected. *See Hollon*, 447 F.3d at 491.

Root does cite *Gatliff v. Comm'r of Soc. Sec.*, 172 F.3d 690 (9th Cir. 1999), to support this argument. But *Gatliff* is clearly distinguishable. There, the Commissioner agreed that the plaintiff could not keep a job for more than two months. *Id.* at 692. Thus, the Ninth Circuit held, as has the Sixth Circuit, that merely having the ability to find a job and physically perform it is not enough to show the plaintiff is capable of "substantial gainful activity"; rather, the ability to hold the job for a significant period of time is also required. *Id.* at 694; *see also Parish v. Califano*, 642 F.2d 188, 192 (6th Cir. 1981) ("The phrase 'substantial gainful activity' implies employment with some degree of regularity."). The plaintiff's brief, however, failed to cite to any evidence supporting her argument that she could not hold a job for a significant period of time. And, the Court is not required to engage in a fishing expedition looking for such evidence. *See Hollon*, 447 F.3d at 491.

15

**CONCLUSION**

The ALJ relied on substantial evidence in concluding that Root was not disabled, and the ALJ fulfilled his other obligations under the regulations.

Accordingly, it is hereby **ORDERED** as follows:

(1)     The plaintiff's Motion for Summary Judgment, R.6, is **DENIED**;

(2)     The defendant's Motion for Summary Judgment, R. 7, is **GRANTED**; and,

(3)     **JUDGMENT** in favor of the defendant will be entered contemporaneously
        herewith.

This the 28th day of October, 2009.

Signed By:

_Amul R. Thapar_  AT

**United States District Judge**